No. 19-2305

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

DANIEL GISSANTANER,

*Defendant-Appellee.*

———————————————

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:17-CR-130

———————————————

**APPELLANT'S RESPONSE TO APPELLEE'S PETITION FOR
REHEARING EN BANC**

———————————————

ANDREW BYERLY BIRGE
*United States Attorney*

JUSTIN M. PRESANT
*Assistant United States Attorney*
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................ii

STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................... 2

ARGUMENT ......................................................................................... 5

    I.    The Panel Did Not Commit an Error, Exceptional or
        Otherwise. ..................................................................................... 5

        A.    The panel did not endorse, address, or commit the
            prosecutor's fallacy. ............................................................ 6

        B.    The panel accurately described the capabilities and
            limitations of probabilistic genotyping software. .......... 11

    II.   The Panel's Testing Analysis Is Correct and Does Not Warrant
        En Banc Review. ........................................................................ 14

        A.    Rehearing is not needed to unify the Court's cases on the
            *Daubert* testing factor. ..................................................... 14

        B.    The panel's decision was correct, and Gissantaner's
            disagreement does not merit en banc review. ............... 16

CERTIFICATE OF COMPLIANCE ...................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..........................................................................2, 15

*McDaniel v. Brown*,
   558 U.S. 120 (2010) ................................................................................7

*Mitts v. Bagley*,
   626 F.3d 366 (6th Cir. 2010) ..........................................................16, 19

*Quilez-Velar v. Ox Bodies, Inc.*,
   823 F.3d 712 (1st Cir. 2016) ...............................................................16

*United States v. Jones*,
   965 F.3d 149 (2d Cir. 2020) ...................................................................5

*United States v. Lee*,
   758 F. App'x 80 (2d Cir. 2018) ..............................................................5

*United States v. Littlejohn*,
   802 F. App'x 760 (4th Cir. 2020) ..........................................................9

*United States v. Reza-Ramos*,
   644 F. App'x 745 (9th Cir. 2016) ........................................................10

*United States v. Semrau*,
   693 F.3d 510 (6th Cir. 2012) ...............................................................15

*Wilden v. Laury Transportation, LLC*,
   901 F.3d 644 (6th Cir. 2018) ...............................................................16

## Rules

6th Cir. I.O.P. 35(a) ....................................................................................1

Fed. R. App. P. 35(b)................................................................................1, 5

Fed. R. Evid. 706......................................................................................17

## **<u>Other Authorities</u>**

John Buckleton, https://johnbuckleton.wordpress.com/strmix/............... 4

Merriam-Webster, https://www.merriam-webster.com/dictionary/match
........................................................................................................11

## **STATEMENT**

En banc review is an "extraordinary procedure."  6th Cir. I.O.P. 35(a).  It is appropriate only if the panel has committed "a precedent-setting error of exceptional public importance" or its decision "directly conflicts" with a decision of the Supreme Court or of this Court.  *Id.*; Fed. R. App. P. 35(b).  That standard is not satisfied here.

First, the panel did not err.  Gissantaner culls a few sentences from their context and accuses the panel of committing and endorsing the prosecutor's fallacy.  That criticism is not fair because the opinion accurately defines "likelihood ratio"—the statistic at issue—and goes to great lengths to explain what it means and what it does not.  Nor does the panel make any other statistical error reflecting a lack of understanding of the technology.  In any case, Gissantaner's semantic arguments do not undermine the correctness of the panel's holding that the district court abused its discretion in excluding the STRmix-derived evidence in this case.  Further, as Gissantaner concedes, the panel decided an issue of first impression; there is no intra-circuit split, no inter-circuit split, and no conflict with Supreme Court precedent.  The posture of this case also militates against en banc review.  The panel's

opinion in this interlocutory appeal merely reverses the wholesale
exclusion of DNA evidence; it remains for experts to testify at trial
about it and for counsel to argue about what inferences should, or
should not, be drawn from it.  Gissantaner therefore has not identified
any error of exceptional importance meriting rehearing en banc.

Second, rehearing is not needed to unify this Court's cases on
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or to
"better cohere" with Supreme Court precedent.  (Pet. 10, 11.)  There is
no intra-circuit split on the meaning of the *Daubert* testing factor.  (Op.
8.)  Nor is rehearing justified because Gissantaner disagrees with the
panel's conclusion that the district court abused its discretion in
evaluating the testing factor.  Gissantaner therefore has not
demonstrated a basis for rehearing en banc under Rule 35.

## BACKGROUND

STRmix is "probabilistic genotyping" software, an incremental but
important advancement in forensic DNA analysis that can be used to
analyze the type of DNA at issue here: where multiple people have
contributed DNA to a sample taken from a gun.  Traditional DNA
analysis often cannot be used where there are multiple contributors or

limited DNA.  STRmix combines established mathematical, chemical, and genetic principles to create a new tool to help identify and prosecute the guilty, and in some cases, exonerate the innocent.

The software takes the same outputs from traditional (including single-source) DNA analysis and converts them into a likelihood ratio, a statistic that represents the probability of the evidence given the prosecution hypothesis over the probability of the evidence given the defense hypothesis.  Here, the evidentiary sample was at least 49 million times more likely if the sample contained Gissantaner's DNA and two unrelated unknown contributors than it was if the sample contained three unrelated unknown contributors.  In other words, the DNA profile is 49 million times more likely if Gissantaner is a donor than if he is not.

STRmix has been extensively tested through validation during its development and by the labs that use it.  The algorithm was designed to favor the defendant, and labs using it follow protocols and internal validation guidelines.  More than 60 peer-reviewed articles favorably review STRmix.  Perhaps for these reasons, it is widely used.  As the market leader in probabilistic genotyping software, STRmix has sold

licenses to a majority of North American labs and is actively used in more than 60 of them, including federal labs like the FBI's and ATF's. *See* John Buckleton, https://johnbuckleton.wordpress.com/strmix/ (last visited Apr. 21, 2021) (containing links to running lists of labs that have adopted STRmix and peer-reviewed publications related to STRmix).

The district court excluded DNA evidence derived from STRmix here principally on the ground that its reliability is supposedly unestablished in situations involving small quantities of DNA—even though STRmix was designed precisely to handle such quantities. But the court ignored evidence of reliability, including testimony of the leading STRmix developer, minimized the significance of one of its own appointed experts, and relied instead chiefly on the president of the firm the defense had hired, whom the court had appointed as an "independent" expert despite his conflict of interest. The panel issued a unanimous opinion holding that the district court abused its discretion both in interpreting the factors under *Daubert* and in applying them.

## ARGUMENT

**I.    The Panel Did Not Commit an Error, Exceptional or Otherwise.**

Gissantaner argues that en banc review is warranted because the case presents an issue of "exceptional importance" (Pet. 1), but he acknowledges that the most common way of demonstrating the existence of such an issue—that the case "involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals," Fed. R. App. P. 35(b)—does not apply here. Rather, the panel decision addresses an issue of first impression among federal courts of appeals. The only other circuit decision addressing a *Daubert* challenge to software similar to STRmix is in accord with the panel's decision. *See United States v. Jones*, 965 F.3d 149, 162 (2d Cir. 2020); *see also United States v. Lee*, 758 F. App'x 80, 82 (2d Cir. 2018) (rejecting sufficiency argument based on the reliability of STRmix because it was a "question[] for the jury"). So are district court and state court decisions that have considered the admissibility of STRmix-derived evidence. (*See* Op. 11–12.)

Moreover, Gissantaner does not identify any material errors in the opinion. He offers only picayune critiques of the manner in which the

panel phrased certain mathematical or scientific concepts. Read in context, the criticisms are not fair or valid, and they do not undermine the correctness of the panel's holding or encourage the misuse of evidence derived from probabilistic genotyping software.

### A. The panel did not endorse, address, or commit the prosecutor's fallacy.

Gissantaner cites two sentences in the panel's opinion that he argues "commit the prosecutor's fallacy" and says this means the "decision authorizes prosecutors throughout the Sixth Circuit to commit the error." (Pet. 5–6.) The first contention mischaracterizes the opinion and the second is hyperbolic.

As relevant here, the prosecutor's fallacy is a statistical fallacy that involves conflating the relative probability of observing evidence given certain assumptions (here, the STRmix likelihood ratio) with the probability that the evidence came from a particular source (here, the probability that the DNA came from Gissantaner) or, put in Bayesian terms, it involves confusing the likelihood ratio (the odds of the DNA evidence given the hypotheses) with the posterior odds (the odds of the prosecution hypothesis given the DNA evidence). Such a fallacy here might look like, "There is a 1 in 49 million chance that the DNA did not

6

originate from Gissantaner." Some generally refer to the prosecutor's fallacy along with other fallacies, such as conflating the DNA statistic with the likelihood of guilt. *See McDaniel v. Brown*, 558 U.S. 120, 128 (2010) (per curiam).

The panel did not commit or endorse the prosecutor's fallacy. First, the opinion formally and correctly describes the meaning of the likelihood ratio here: "More precisely, if less accessibly, that means the DNA 'profile is 49 million times more likely if [Gissantaner] is a donor than if he is not.'" (Op. 5 (alteration in original, quoting the record).) By stating that the opinion was "[m]ore precise[]" in explaining the formal meaning of the ratio, the panel impliedly acknowledged that paraphrasing elsewhere was less precise. Moreover, the panel's entire next paragraph addressed the meaning of "[t]he two 'ifs,'" that is, the conditional clauses that make a likelihood ratio what it is. (*Id.*) "The ratio does not on its own tell us how likely it is that Gissantaner illegally possessed a firearm. Determining whether it is likely that Gissantaner, as opposed to someone else, contributed to the mixture requires looking at other facts beyond the scope of DNA evidence." (*Id.*) The panel accurately described the statistical concepts.

7

Second, the two sentences under attack are not fairly read as committing or endorsing the prosecutor's fallacy. The first sentence reads: "The software in the end helps to measure the probability that a mixture of DNA includes a given individual's DNA." (Op. 4; Pet. 5.) The disputed words are "probability" and "includes." Likelihood ratios are undoubtedly "probabilities," namely relative conditional probabilities of observation. And while "includes" could be read to suggest the forbidden source probability, it can equally be read to accurately state that the prosecution hypothesis in the likelihood ratio involves the "inclusion" of the person of interest. Gissantaner's own petition uses "included" and "inclusionary" to refer to the relevant hypothesis. (Pet. 9 & n.2.) The second sentence reads: "The likelihood ratio tells us only that, in the abstract and without considering any other evidence in this case, it would be unusual if this DNA contained no DNA contributed from Gissantaner." (Op. 5; Pet. 5.) Gissantaner claims this sentence is wrong because it says it would be "unusual" if the evidentiary sample here "contained" no DNA from Gissantaner. Again, "unusual" simply reflects relative probabilities, and "contained" can be equally construed as suggesting a source of DNA and simply the

8

conditional prosecution hypothesis.  Gissantaner uses the same language he condemns: two sentences after Gissantaner criticizes the panel for using "contained," he uses the word twice to describe the prosecution and defense hypotheses.  (Pet. 5.)

Thus, the panel's decision accurately describes the likelihood ratio, and its statements elsewhere about the meaning of the ratio are appropriate ways to paraphrase the formal statement to make the opinion more accessible.  Nowhere does the panel endorse the fallacy or encourage prosecutors to commit it.  And when committed, cross-examination and jury instructions can correct the error—just as they can if the defense mistakenly commits the defendant's fallacy, which occurs when a defense attorney claims the DNA evidence is irrelevant because some number of people in the population would produce an inculpatory likelihood ratio.  In short, courts are adequately equipped to monitor the way the evidence is used and protect against its misuse. *See United States v. Littlejohn*, 802 F. App'x 760, 764–65 (4th Cir. 2020) (holding the government did not commit the prosecutor's fallacy because it did not equate the statistic to the probability of guilt and observing that it is proper in closing to argue about inferences that may be drawn

9

from evidence); *see also United States v. Reza-Ramos*, 644 F. App'x 745, 746 (9th Cir. 2016) (holding that despite the commission of the prosecutor's fallacy, "there was no reasonable probability that the error affected the outcome of the trial").

In any case, the prosecutor's fallacy has nothing to do with the panel's holding here. The panel reversed the district court's decision because that court failed to adhere to *Daubert*. No *Daubert* factor turns on the prosecutor's fallacy, which is a mere error in logical reasoning that can and should be avoided in presenting evidence to a jury. The issue is so minor in the context of this appeal that "prosecutor's fallacy" appears in Gissantaner's principal brief only once, on page 51, in the context of discussing a supposed "communication problem" when testifying about likelihood ratios.[1] After Amici Curiae accused the government of committing the fallacy, the government explained why it had not (the disputed sentence was appropriate paraphrasing) and why

---

[1] At the *Daubert* hearing, a defense witness conceded that likelihood ratios could be accurately communicated to juries and in some instances were the best means to communicate the information. (Gov't Br. 12.) Likelihood ratios have been used in forensic science for more than a century. (*Id.* at 34.)

10

concerns about the fallacy were overblown (pointing out that Amici themselves had used similar paraphrasing, just as Gissantaner uses language similar to the panel's now). (Reply Br. 33–34 n.14.)

In sum, this issue is peripheral, at best; no aspect of the panel's discussion of likelihood ratios warrants invoking the extraordinary procedure of rehearing en banc.

### B. The panel accurately described the capabilities and limitations of probabilistic genotyping software.

Gissantaner relatedly argues that the panel imported "single-source concepts"—i.e., matching—into the mixed-DNA arena. Ironically, in his critique of the panel for using the word "match," Gissantaner undertakes his own "matching" exercise of what he calls "plausible genotypes," but might be more accurately described as genotypes explored by the model. (Pet. 8–9.)[2] In support of this argument he analyzes genotype weights at locus D2S1338, one of the 24

---

[2] While "match" may be a term of art in forensic science, such as in "random match probability," it also has colloquial meanings, including as a verb, "to be the counterpart of," and as a noun, "a . . . thing equal or similar to another." Merriam-Webster, https://www.merriam-webster.com/dictionary/match (last visited Apr. 21, 2021). It is accurate to say that many of Gissantaner's alleles matched many of the alleles in the evidentiary sample.

11

loci analyzed by the Michigan State Police.  (*See* Gov't Br. 33.)
Gissantaner suggests it is strange that STRmix finds a high likelihood
ratio for his genotype even though at this particular locus the software
calculates a weight of only 3.32%, lower than alternatives, and at a site
involving drop-out no less: "The panel decision fails to appreciate the
degree of uncertainty in the trace contributor's true genotype."  (Pet.
9.)[3]

The panel did not discuss this locus or the genotype-weighting
issue because it was not briefed, or argued below.[4]  But this new
argument is no cause for alarm.  The genotype weights are baked into
the final likelihood ratio by STRmix's algorithm—STRmix itself does

---

[3] Drop-out is one of several biological phenomena modeled by
STRmix to determine the likelihood ratio.  (Reply Br. 48 n.20, 53 n.21.)
Drop-out means considering the possibility that a true contributor's
alleles are missing from certain loci, for example, if they degraded, were
lost in extraction, or did not amplify during the polymerase chain
reaction.  Drop-out, like drop-in, stutter, and other phenomena, "are not
peculiar to STRmix and they have been in existence since the inception
of DNA analysis."  (R.77: 5/23/18 Tr., PageID.2628–29.)  Contrary to
Gissantaner's suggestion that the panel did not appreciate the role
drop-out plays, the panel explained, "Although people have two alleles
at each locus, one or more of the alleles might not have made it into the
mixture."  (Op. 3.)

[4] Amici raised a more general argument regarding genotype
weights, to which the government responded.  (Reply Br. 19.)

the work to "appreciate the degree of uncertainty" for each contributor. Forty-nine million is a likelihood ratio strongly supporting inclusion, but STRmix frequently produces far greater ratios, such as in the quadrillions or octillions, and at a very general level, the 49-million ratio reflects the uncertainty at certain loci such as the one Gissantaner highlights. There are other loci, too, with lower certainty. But the ratio also reflects the greater certainty at many loci.

By contrast to his example, and for purposes of the intuitive "matching" exercise Gissantaner has invited, his profile is consistent with heavily weighted genotypes at D3S1358 (15.1%, first listed), D1S1656 (88.0%, first listed), D10S1248 (70.2%, first listed), D13S317 (11.4%, second listed), D16S539 (23.6%, first listed), D18S51 (36.1%, second listed), TH01 (11.9%, fourth listed), vWA (17.0%, second listed), D21S11 (16.1%, second listed), D7S820 (11.3%, second listed), D5S818 (27.6%, second listed), TPOX (13.5%, third listed), D12S391 (19.9%, second listed), and FGA (16.3%, first listed). (R.41-9: STRmix Reports, PageID.906–10, 913; R.41-13: Electropherograms, PageID.1008–09.) In analyzing his profile and the evidentiary sample, STRmix had greater confidence in some loci, and lesser confidence in others, and when all of

those numbers were input into the formula, the likelihood ratio was a very inculpatory 49 million.

Gissantaner's contention that the panel has laid the groundwork for misuse of statistics gives short shrift to the passages of the opinion that say just the opposite: that there is a "need to use evidence of this sort carefully" and that "it is imperative that qualified individuals explain how the program works and ensure that it produces reliable information about the case." (Op. 6.) The panel appropriately explained the statistical concepts involved and it is for the expert witnesses, lawyers, and trial judges in each case to ensure they accurately describe the DNA statistics before the factfinder.

## II. The Panel's Testing Analysis Is Correct and Does Not Warrant En Banc Review.

### A. Rehearing is not needed to unify the Court's cases on the *Daubert* testing factor.

Gissantaner also seeks rehearing en banc based on dicta in the panel's opinion discussing whether *Daubert* requires a technology to be tested, rather than simply testable, which he says is at odds with other opinions of this Court that "better cohere" with Supreme Court precedent. The panel observed that "[i]t is not clear what the

parenthetical means" in *Daubert*'s statement that the testing inquiry is whether the theory "can be (and has been) tested." (Op. 8 (quoting *Daubert*, 509 U.S. at 593).) This was a simple observation that was neither material to the holding nor incorrect or at odds with other pronouncements of this Court or the Supreme Court.

The cases Gissantaner cites as in tension with the panel's decision, all involving very different technologies, merely demonstrate that testing is an important part of the *Daubert* analysis, and that courts have excluded expert testimony where evidence of testing was inadequate. With one exception, the cases do not focus on the distinction in the *Daubert* parenthetical. And the exception supports the panel's observation that testability may be a separate matter from empirical testing: in *United States v. Semrau*, 693 F.3d 510 (6th Cir. 2012), the Court observed "there are concerns with not only whether fMRI lie detection of 'real lies' *has* been tested but whether it *can* be tested." *Id.* at 522. In any case, under the multi-factor *Daubert* inquiry, testing and testability, and the other factors, will have varying degrees of importance in different cases based on the theory at issue, so rulings based on testing in other cases do not create a conflict with the

15

discussion of testing here. Another of Gissantaner's cases recognizes this feature of *Daubert*. In *Wilden v. Laury Transportation, LLC*, 901 F.3d 644 (6th Cir. 2018), the Court wrote that "the *Daubert* inquiry 'eschews . . . per se approaches,'" observing that in some cases evidence could be admitted without testing while in other cases different evidence might have to be excluded because of the lack of testing. *Id.* at 652 (quoting *Quilez-Velar v. Ox Bodies, Inc.*, 823 F.3d 712, 718 (1st Cir. 2016)).

And, again—dispositively—the panel expressly stated that the can-be/has-been distinction was immaterial to its decision because STRmix both can be and *has been* tested, as discussed further below. (Op. 8.)

## B. The panel's decision was correct, and Gissantaner's disagreement does not merit en banc review.

The panel correctly held that the district court misinterpreted the law and improperly weighed the evidence on the four *Daubert* factors. Gissantaner disagrees, but "mere disagreement on the merits" is seldom if ever a valid basis for rehearing a case en banc. *Mitts v. Bagley*, 626 F.3d 366, 370–71 (6th Cir. 2010) (Sutton, J., concurring in the denial of rehearing en banc).

16

Further, Gissantaner does not here dispute the panel's reversal of the district court's legal interpretation of, and analysis of the evidence under, three of the four *Daubert* factors—peer review, error rate and standards, and general acceptance. (Op. 8–12, 14–16.) Instead, he focuses singularly on testing. But the panel reached the right conclusion on that factor, too. It recognized that the district court misframed the testing inquiry in evaluating the evidence of testing before it. (Op. 14.) STRmix has been tested extensively by the developers and the labs that use it, including the Michigan State Police lab involved in this case. (*See* Op. 8.) In response to shifting arguments about that testing—specifically the internal validation study—the government produced supplemental data and information, and the district court declined the government's offer to provide still further information. (Op. 16; Gov't Br. 14, 20–23; Reply Br. 10–13 & n.2; R.146: Notice, PageID.3414; R.152: 7/8/19 Tr., PageID.4055, 4193–94; R.159: Gov't Br., PageID.4218 & n.2.)

The district court's conclusion as to the testing factor relied on an "independent" expert appointed under Federal Rule of Evidence 706 even though he had already worked on the case for Gissantaner. (Op.

15–16.)  He advanced the testing critique on which the district court
relied some 15 months after he began consulting for Gissantaner, a
critique that was meritless for the reasons the panel explained.  (Op. 13,
15–16; Gov't Br. 46–48.)  And although STRmix can be tested by
others—including that expert, and other defense experts—they didn't
test it (Op. 13; Reply Br. 11), so the only evidence of testing before the
district court was the extensive testing conducted by the developers and
government labs (and a couple of peer-reviewed papers from labs in
neither category).  (*See* Gov't Br. 43–49; Reply Br. 31–36.)  Thus,
STRmix satisfies the testing prong not only because it was thoroughly
tested, but also because it could have been tested by the defense, and
was not.

In arguing otherwise, Gissantaner reiterates the same arguments
he made before the panel.  (Pet. 14.)  He claims the application of
STRmix in this case was "peripheral," but the sample here is well
within STRmix's capabilities, as discussed in the briefing and record.
The Michigan State Police validated the software down to at least 4%,
and at least 26 picograms, encompassing the 7%, 49 picogram sample in
this case.  (*E.g.*, Reply Br. 14–15.)  Contrary to the petition's assertions,

the "diagnostic test" did not "indicate[] a problem" and the
"contamination rate" argument is contradicted by the record.  (Pet. 14;
Reply Br. 25–27, 48–49.)  Analysts must estimate the number of
contributors even in single-source DNA cases.  The defense is free to
question the analyst's determination and can present competing
evidence if it wishes to do so (for example, the defense in this case could
advance a four-contributor theory).  In fact, studies show that assuming
the incorrect number of contributors is very unlikely to materially affect
high likelihood ratios like the one here.  (*See* Reply Br. 42, 49–51.)  The
panel was right to question the district court's review of the evidence,
especially in light of its legal errors, and given its failure to identify
what was missing from the Michigan State Police's internal validation
study that would have satisfied its concerns.  (Gov't Br. 48.)

In any event, the panel's determination that the district court
abused its discretion in weighing the evidence under the testing factor
is not an "exceptional" issue that warrants en banc review, a procedure
that is "not favored" and should be permitted "only in the most
compelling" or "rarest of circumstances."  *Mitts*, 626 F.3d at 370

(Sutton, J., concurring in the denial of rehearing en banc) (internal quotation marks omitted).  The petition should be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

</div>

Dated: April 21, 2021        /s/ Justin M. Presant
JUSTIN M. PRESANT
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned certifies that this response complies with the type-volume limitation and contains no more than 3,900 words as provided by Rule 35(b)(2), (e). A word count was made using Office 365 and the response contains 3,835 words.

ANDREW BYERLY BIRGE
United States Attorney

Dated: April 21, 2021

/s/ Justin M. Presant
JUSTIN M. PRESANT
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404